**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

MICHAEL SCHWARTZ,                                    Case No. 1:23-cv-375

      Plaintiff,

                                      Cole, J.
        v.                                                            Bowman, M.J.

HOMEFIX CUSTOM REMODELING CORP,

      Defendant.

**REPORT AND RECOMMENDATION**

This civil action is now before the Court on Defendant's Motion for Enforcement of a Settlement Agreement (Doc. 14) and the parties' responsive memoranda. (Doc. 16, 20). Defendant also requests reasonable attorney fees in its motion. (Doc.14). Upon careful review, the undersigned finds that Defendant's motion is well-taken.

**I.  Background**

Plaintiff initiated this action by filing a Complaint on June 16, 2023. (Doc. 1). On August 29, 2023, Defendant filed a motion seeking enforcement of settlement agreement and reasonable attorney fees in the above captioned case. Plaintiff filed a response in opposition to which Defendant filed a reply. Neither party has requested oral argument or an evidentiary hearing. The undersigned concludes that neither oral argument or an evidentiary hearing is necessary to the fair resolution of this case. *See* Local Rule 7.1(b)(2).

## II. Communication Pertaining to Settlement

On July 10, 2023, Defendant's counsel began engaging Plaintiff in settlement negotiations. (Doc. 14 at 21-22). Over the following weeks, the parties engaged in settlement negotiations via email and phone conversation. (Doc. 14, *See* Exhibit A).

In an email exchange on July 27, 2023 and August 3, 2023, Plaintiff agreed to most of the terms of the settlement and proposed a counter-offer concerning terms of payment and information about an employee who Plaintiff alleges contacted him in violation of the Telecommunication Consumer Protection Act. Plaintiff wrote the following email to Defendant's counsel[1]:

Mr. Pinilla:

I agree, we're close. In an effort to improve the readability of the email thread, I've simplified our correspondence to the paragraphs below:

1. We will agree to OH law, but cannot agree to the law of some unknown state. We have no way of knowing where you may move to from time to time. Further, the Settlement Agreement will contain a clause encompassing a non-admission of liability or wrongdoing of any kind.

Agreed. Hopefully, there will be no future contact and this will be moot.

**Great!**

2. I only meant to convey that HCR does not use an ATDS. We agree to provide the lead generator responsible for identifying your phone number and providing same to HCR. HCR has never shared your information with any other party. HCR does employ a person named Ben. Part this person's job responsibilities for HCR is to send text messages to existing or prospective customers that HCR has been informed requested to be contacted for an appointment. Please provide screenshots of the text messages you received with originating phone number, date, and time, so that we can search the system to confirm they were sent by HCR.

---

[1] The color and underline is original to the email. The red language is the proposed term by Defendant's counsel. The normal text is Plaintiff's response. The blue/underline/bold is Defendant's counsel reply to Plaintiff which was sent in an email dated August 3, 2023.

Understood. If Ben was an independent contractor or external employee at the time of contact, I want his full name, mailing address, phone number, and email address and the same information for his employer, if other than one of the HCR companies. If Ben was an HCR employee at the time of contact, then he is covered by the Settlement Agreement. Please see the attached screenshot below for information about Ben. Ben sent texts to me from (407) 410-3602 on the following days and times:

2-25-22 at 10:34 AM

3-1-22 at 10:31 AM

3-2-22 at 10:31 AM

 3-3-22 at 8:20 AM

**We will look further into this and provide any responsive information we uncover.**

3. Approved

4. HCR will agree to pay $7,000 in a single lump sum within 15 business days of your filing the dismissal with prejudice. We ask that you agree to file the dismissal within 5 business days of the date that HCR provides to you all the information you have requested (sections 2 and 3 above).

I will agree to a single lump sum payment of $7,000 within 15 business days of my filing a dismissal with stipulation. The dismissal with stipulation will be filed within 3 business days of executing a written Settlement Agreement. The dismissal with prejudice will be filed within 5 business days of all terms of the Agreement being fulfilled (payment and all information received as agreed).

**I think I understand this and, based on my understanding, this is Agreed. Please provide a copy or language concerning the proposed stipulation so that I can review. We may want to file a notice of settlement or request for additional time to allow the next steps to be completed.**

(Doc. 14-1 at PageID 96-97).

In addition to the blue/underline/bold language in the August 3, 2023 shown above, Defendant's Counsel counter-offer and countered with some new terms:

3

Mr. Schwartz:

Sorry for the delay in responding. I have been tied up. See my responses below in Bold and Underline.

In addition to those notes, we are making an addition to section 1 concerning the $1,500 payment for future calls or texts. That change involves a situation where HCR is unable to confirm and disputes a claim by you that HCR contacted you, such that HCR declines to make a payment to you. In that situation, in the event that you opt to file suit, then the prevailing party in any such lawsuit/proceeding shall be entitled to an award of all attorneys' fees and costs incurred in or related to the dispute, including pre-suit discussions, alternative dispute proceedings, appeals, etc., and including the attorneys' fees and experts costs incurred in seeking to determine the amount and/or reasonableness of the fees/costs award, and all such amounts shall be payable by the non-prevailing party.

I look forward to your response and to closing this out.

(*Id.* at 95-96).

That same day, Plaintiff responded with the following email to Defendant's

Counsel:

Mr. Pinilla:

Regarding the following:

"In addition to those notes, we are making an addition to section 1 concerning the $1,500 payment for future calls or texts. That change involves a situation where HCR is unable to confirm and disputes a claim by you that HCR contacted you, such that HCR declines to make a payment to you. In that situation, in the event that you opt to file suit, then the prevailing party in any such lawsuit/proceeding shall be entitled to an award of all attorneys' fees and costs incurred in or related to the dispute, including pre-suit discussions, alternative dispute proceedings, appeals, etc., and including the attorneys' fees and experts costs incurred in seeking to determine the amount and/or reasonableness of the fees/costs award, and all such amounts shall be payable by the non-prevailing party."

Please add that both sides are responsible for their own costs if the lawsuit ends in a settlement agreement.

Regarding #2 (texts from "Ben"): this is fine as long as the information is delivered by the response deadline.

4

Thank you,

Michael Schwartz

(*Id.* at 95).

This response from Plaintiff represented his acceptance of the remaining terms of the settlement agreement. Later that day, Defendant's Counsel replied and accepted as well. (emphasis added):

> Approved. Thank you!
>
> Please send a copy of the proposed dismissal stipulation and lets decide whether to ask for an extension or other option to give us time to finalize the settlement agreement.

(*Id.* at 94).

Plaintiff replied to that email on August 4, 2023 with the following proposed dismissal stipulation:

> NOW COME Plaintiff Michael Schwartz and Defendant Homefix Custom Remodeling Corp., and hereby notify the Court that the parties have entered into a settlement agreement which resolves the matters in dispute, pursuant to the terms and conditions set forth herein. The parties stipulate and agree that this case shall be dismissed without prejudice; however, after October 13, 2023 said dismissal shall be deemed to be with prejudice, unless prior to that date any party shall motion the Court to enforce the terms of the settlement agreement; and, further, that this Court shall retain jurisdiction until October 13, 2023 for said purpose.

*Id.*

Thereafter, Defendant's Counsel preceded to state that Counsel would review the stipulation and begin "putting together the proposed settlement agreement." *Id.*

## III.    Post-Settlement Plaintiff Actions

Despite this agreement, Plaintiff filed an application for entry of default against Defendant on August 15, 2023. (Doc. 8). Plaintiff, purportedly attempted to leverage the

possibility of a default judgment against Defendant to demand more favorable settlement terms including a settlement payment of $14,000, double the amount previously agreed. (See Doc. 14-2 at PageID 115).[2]  Thereafter, on August 29, 2023, Defendant filed the instant motion to enforce the settlement agreement.  For the reasons that follow, the undersigned finds that Defendant's motion is well-taken.

## IV.    Analysis

### A.    The July 27 Offer and August 3 Acceptance

"Because settlement agreements are a type of contract, the formation and enforceability of a purported settlement agreement are governed by state contract law." *Smith v. ABN Amro Mortg. Grp. Inc.*, 434 Fed. Appx. 454, 460 (6th Cir. 2011)(citing *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992)). It is undisputed that Ohio law governs the resolution of this dispute. Controlling Ohio law recognizes settlement agreements as enforceable contracts to resolve a legal dispute. *Continental W. Condominium Unit Owners Ass'n v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, 660 N.E.2d 431 (1996). Under Ohio law, "a valid settlement agreement is a contract between parties, requiring a meeting of the minds as well as an offer and acceptance." *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 683 N.E.2d 337, 338 (1997) (syllabus).

Additionally, the Sixth Circuit has recognized the ability of trial courts to enforce a settlement agreement through terms conveyed by an email exchange if the terms are definite, and an offer, acceptance and a meeting of the minds occurred. *Tagnetics, Inc. v. Kayser*, 842 F. App'x 969, 972 (6th Cir. 2021).  Further, the Sixth Circuit has held courts

---

[2] The undersigned recommended that Plaintiff's application for default be denied on September 12, 2023. (Doc. 17).

may summarily enforce settlement agreements to promote judicial efficiency. *See Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976).

Here, like in *Tagnetics*, the terms agreed to in the email exchange were definite. As demonstrated by the email exchange, Defendant and Plaintiff agreed to a payment amount, the timing for payment, non-monetary terms, and even went so far as to contemplate future liability and choice of law for the settlement agreement. Plaintiff proposed dismissal language which Defendant understood to indicate this dispute was resolved.

Defendant made an offer on July 27. Plaintiff accepted most of those terms and counter-offered with additional terms. After additional negotiations on August 3, both sides preceded to accept the terms of the agreement. At this point, a valid contract and settlement agreement was formed. In further support that an agreement was reached, Plaintiff submitted proposed stipulated dismissal language on August 4 to Defendant's counsel. Because the parties reached an enforceable agreement, Defendant's motion to enforce the settlement agreement is well-taken.

### B. Plaintiff's Conduct Merits Award of Reasonable Attorney Fees

When enforcing a settlement agreement and evaluating whether to impose attorney fees, the Court "looks to the laws of the state in which it sits." *Jackson v. Reliance Constr. Servs., LLC*, 2023 WL 4933269, at *3 (S.D. Ohio Aug. 2, 2023). Ohio abides by the "American rule" with respect to attorney fees, meaning the prevailing party in a civil case cannot recover attorney fees. *Cruz v. Eng. Nanny & Governess Sch.*, 169 Ohio St. 3d 716, 724, 207 N.E.3d 742, 749. "However, there are three well-established exceptions to the American rule: (1) when a statute creates a duty to pay attorney fees, (2) when the

losing party acted in bad faith, and (3) when the parties contracted to shift the fees." *Id.* at 750. The Court has held that repudiation of a settlement agreement and attempts after a settlement to negotiate better terms that resulted in increased litigation entitle the prevailing party to attorney fees under the bad faith exception to the American rule. *Tocci v. Antioch Univ.*, 967 F. Supp. 2d 1176, 1202 (S.D. Ohio 2013).

Plaintiff requested an application of default against Defendant with knowledge that the parties had agreed to a settlement agreement. This was a repudiation of the settlement agreement. Subsequently, Plaintiff tried to extract better terms, demanding $14,000 and other terms from Defendant. Plaintiff's bad faith conduct resulted in Defendant having to incur additional attorney fees to write the motion and memoranda before the court. As such, Defendant is entitled to reasonable attorney fees.

### V. Conclusion and Recommendation

Accordingly, **IT IS RECOMMENDED THAT** Defendant's Motion for Enforcement of the Settlement Agreement and Reasonable Attorney Fees (Doc. 14) be **GRANTED**[3].

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate

---

[3]If this portion of the Report and Recommendation is adopted by the District Judge, Defendant should then submit an affidavit setting forth the fee amount requested and any supporting documents relating to the amount of its attorney fees in relation to this case.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MICHAEL SCHWARTZ,                                 Case No. 1:23-cv-375

      Plaintiff,

                              Cole, J.
        v.                                       Bowman, M.J.

HOMEFIX CUSTOM REMODELING CORP,

      Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).